793 P.2d 131

**Raul N. MORENO, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

*Garrett Fluid Systems Company,*
**Respondent Employer,**

**The Garrett Corporation,
Respondent Carrier.**

**No. 1 CA–IC 89–069.**

Court of Appeals of Arizona,
Division 1, Department C.

March 15, 1990.

Review Denied July 3, 1990.*

Miller & Miller, Ltd. by Murray Miller, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Fennemore Craig, P.C. by John W. Main, Jr., Phoenix, for respondents Employer and Carrier.

OPINION

CONTRERAS, Presiding Judge.

This is a special action review of an Industrial Commission award ordering repayment of long-term disability benefits. The only issue presented is whether the administrative law judge erred by ordering the self-insured respondent employer Garrett Fluid Systems Co. (Garrett), to pay the long-term disability insurance carrier for amounts it had overpaid to the petitioner employee (claimant). We conclude that the administrative law judge properly ordered such payment to be made. Accordingly, we affirm the award.

On August 4, 1985, the claimant sustained an industrial injury to his right foot and filed a workers' compensation claim. The employer who is self-insured accepted the claim for benefits. The administration of the claim involved periods of temporary total disability and temporary partial disability. On December 9, 1987, a notice of claim status was issued closing this claim with a 7% scheduled permanent partial impairment.

In addition to workers' compensation benefits, the claimant had long-term disability benefits available to him through a group policy obtained by Garrett with Fireman's Fund/Amex Life Assurance Company (Amex). The Amex policy specifically provided that long-term disability benefits

---

* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this matter.

payable under the policy would be reduced by any amounts payable pursuant to workers' compensation.

Following the closure of the claimant's claim, Amex paid the claimant the maximum monthly benefit to which he was entitled under its policy without any reduction. On July 27, 1988, Garrett issued a notice of claim status rescinding the December 9, 1987 notice and reinstating the claimant to temporary total disability benefits as of November 9, 1987. This action resulted in claimant receiving an overpayment of long-term disability benefits for each month from November 1987 through August 1988, because each month's benefits paid by Amex would have been reduced by the workers' compensation benefits which were payable.

In response to this asserted overpayment, an Amex representative contacted the claimant and requested that he agree to repay these benefits. The claimant refused. Following this refusal, Garrett paid Amex for the overpayment of long-term disability benefits and then took a credit against the claimant's retroactive workers' compensation benefits, which it owed to claimant. The claimant timely protested the July 27, 1988 notice of claim status, which noted these credits, and a hearing was held.

On March 16, 1989, the administrative law judge entered an award finding that Garrett owed Amex the amounts it had overpaid to claimant and ordered Garrett to pay Amex for the overpayment of long-term disability benefits. Specifically, the administrative law judge found:

2. By means of the Garrett Income Protection Plan referred to in Finding No. 1 benefits were paid after February 18, 1987 in the belief that applicant was not entitled to Workmen's Compensation. Thus applicant was paid $1,875.00 each month mistakenly as the amount should have been reduced by $890.89, which amount should have been paid by the employer self-insurer as worker's [sic] compensation. Since Amex paid it in error Garrett owes the amounts paid to Amex.

3. A.R.S. § 23–1068(B) as pointed out by applicant is not the clearest statutory expression. It is clear however that persons who pay Employee's Workmen's Compensation benefits "... shall be entitled to a direct ... payment in the amount previously paid" on behalf of the employer. Thus everybody comes out whole.

## AWARD

IT IS ORDERED that the Employer, the Garrett Corporation pay Amex the amounts overpaid to applicant through the Income Protection Plan.

This award was affirmed on administrative review, and the claimant brought this special action. In reviewing the record in this matter, and in order to better appreciate the situation which resulted in an overpayment to claimant, we note that on December 9, 1987, Garrett closed the claimant's claim and retroactively terminated the claimant's workers' compensation benefits effective November 9, 1987. Thereafter, the claimant looked to the Amex policy for the maximum monthly allotment of long-term disability benefits. The claimant continued to receive these long-term disability benefits until July 27, 1988, when Garrett rescinded its December 9, 1987 notice and retroactively reinstated the claimant's temporary total disability benefits under workers' compensation as of November 9, 1987. Therefore, we are presented with a scenario where the claimant was *denied* workers' compensation benefits from November 9, 1987, until July 27, 1988. However, on that date (July 27, 1988) his condition was determined to have been compensable under workers' compensation and temporary total disability benefits were awarded. Accordingly, claimant was entitled to workers' compensation benefits for the period extending from November 9, 1987 to July 27, 1988.

Therefore, the claimant received the maximum monthly long-term disability benefits allowable under the Amex policy from November 1987 through August 1988 without reduction for payment of workers' compensation benefits. Because workers' com-

pensation benefits were subsequently determined to be owed for those months, claimant received an overpayment. A.R.S. § 23–1068 provides a method for recoupment of overpayments. It provides in pertinent part:

> B. [I]f ... disability benefits are paid or otherwise provided by an employer to ... an employee for an injury ... for which ... compensation benefits payable pursuant to this article have been denied ... and such injury ... is subsequently determined to be compensable under this article, such employer or the person authorized by such employer to provide such benefits shall be entitled to a direct payment out of, or a direct credit against, the medical or compensation benefits payable under this article in the amount of the benefits previously paid or provided.

The claimant argues that the administrative law judge erred by ordering payment because his contract with Amex was personal and did not involve Garrett or his right to workers' compensation. We disagree. The claimant received long-term disability benefits under a group disability insurance policy issued to Garrett for its Employee's Income Protection Plan. That policy contained the following relevant provisions:

PART X. REDUCTION IN INDEMNITY FOR WORKERS' COMPENSATION LAWS

The amount of any indemnity or expense payable under the policy shall be reduced by any amount paid or payable under any Workers' Compensation or Occupational Disease Act or Law.

. . . .

PART XV. GENERAL PROVISIONS

. . . .

(1) WORKERS' COMPENSATION. The policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.

It is the claimant's position that because he paid the premiums for this group insurance policy, he is entitled to the full monthly amount of long-term disability benefits provided by the policy, without any reduction for workers' compensation benefits. For that reason, the claimant asserts that it was error for the administrative law judge to order Garrett to pay Amex.

In response to this argument, we first note that the long-term disability policy was not issued to the claimant. It was issued to Garrett for the benefit of any of Garrett's employees who desired to participate in its Employee's Income Protection Plan. Second, this policy did not provide a fixed monthly sum of long-term disability benefits. It provided a maximum monthly benefit subject to various reductions. One specific reduction, as previously pointed out, was for any amount paid or payable under workers' compensation. Therefore, the claimant's premium payments were actually for a maximum monthly benefit amount subject to applicable reductions.

The claimant also argues that Part X and Part XV(1) of the Amex policy, set out above, are ambiguous. We find no ambiguity. The present special action review, although involving a specific reduction in the disability insurance policy, arises out of A.R.S. § 23–1068(B), which provides for an offset by direct payment or direct credit when there has been an overpayment. Here, because of the specific policy provision, there was clearly an overpayment. We note that a different result might obtain if the disability insurance policy provided that any benefits paid would be in addition to or supplement workers' compensation benefits. Such is not the case.

The only remaining question is whether A.R.S. § 23–1068(B) allows the employer to make a correction for this overpayment by paying the long-term disability carrier and taking a credit against the claimant's workers' compensation benefits. The statute provides that either the employer or the long-term disability insurance carrier is entitled to recoup the overpayment through a direct payment out of workers' compensation benefits payable or a direct credit against future benefits.

In this case, the long-term disability insurance carrier approached the claimant and requested that he sign an agreement which stated "I promise to repay to Amex

Life any workers' compensation awarded to me for which Amex Life has already paid me." The claimant not only refused to sign this agreement but also refused to acknowledge that he had received an overpayment. The long-term disability insurance carrier then turned to Garrett and received a direct payment out of the claimant's workers' compensation benefits which were currently payable based on the retroactive benefits owed under the July 27, 1988 notice of claim status. Following this direct payment, Garrett received a direct credit against the workers' compensation benefits it owed the claimant under the July 27, 1988 notice, which had rescinded closure and reinstated temporary total disability benefits.

It is our opinion that A.R.S. § 23–1068 contemplates this type of recoupment of an overpayment of long-term disability benefits. We find no error in the administrative law judge's award requiring Garrett to make this direct payment to Amex out of the claimant's retroactively reinstated temporary total disability benefits. For all of the foregoing reasons, the award is affirmed.

GERBER and BROOKS, JJ., concur.