3 P.3d 1028

**Dorothy GIBBONS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Department of Health Services, Respondent Employer,**

**State of Arizona Risk Management, Respondent Carrier.**

**No. 1 CA–IC 99–0076.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 26, 1999.

---

Ely, Bettini, Ulman, Insana & Turley by Trace A. Bartlett, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Office of the Attorney General, Insurance Defense Section by Charles W. Ferris, Jr., Phoenix, for Respondents Employer and Carrier.

## OPINION

GERBER, Judge.

¶ 1 This matter is a statutory special action review of an Arizona Industrial Commission ("ICA") award and decision upon review denying relief requested under Arizona Revised Statutes Annotated ("A.R.S.") sections 23–1061(J) (1995) and 23–1068(B) against a disability insurer ("Standard") that paid petitioner Dorothy Gibbons ("Gibbons") short-term disability benefits while her workers' compensation claim was denied. The administrative law judge ("ALJ") found in part that the ICA could never assert jurisdiction over a disability insurer. Without deciding that the ICA can never assert jurisdiction, we conclude more narrowly that jurisdiction requires a disability insurer to have claimed a direct payment from or a direct credit against a claimant's workers' compensation benefits. Because Standard never claimed such a direct payment or credit, the ICA could not assert jurisdiction over it. We explain the following reasons for affirming the award.

¶ 2 The essential facts are undisputed. Gibbons was a State of Arizona ("State") employee. The State held group short-term disability insurance for its employees with Standard, under whose policy short-term dis-

ability benefits and workers' compensation benefits were mutually exclusive.

¶ 3 Gibbons filed a workers' compensation claim which was initially denied and later accepted. The State then paid her retroactive workers' compensation temporary disability benefits of $15,481.55. While the workers' compensation claim was denied, she applied to Standard for short-term disability benefits. After notifying her that short-term disability benefits and workers' compensation benefits were mutually exclusive and having her sign an agreement to repay all short-term disability benefits if her workers' compensation claim were accepted, Standard paid Gibbons monthly benefits totaling $7,765.68. When the workers' compensation claim subsequently was accepted, Standard relied on the mutually exclusive terms of the disability policy and the repayment agreement to demand that Gibbons repay all her short-term disability benefits. She refused and Standard threatened legal action. Standard never claimed a direct payment from or a direct credit against her workers' compensation benefits.

¶ 4 Gibbons then requested an ICA investigation under A.R.S. section 23–1061(J) and section 23–1068(B). Relying on "common principles of equity, quantum meruit, unjust enrichment, and common fund principles," she asserted that the amount she must repay Standard should be reduced by "at least an amount proportionate to the legal costs and attorneys [sic] fees the applicant is obligated to pay for pursuing this matter." The ICA Claims Division declined to investigate, stating that it could not assert jurisdiction over Standard. Gibbons timely requested a hearing and moved to join Standard, who declined to appear. The ALJ refused to join Standard. Gibbons and the State then agreed to waive a hearing and the ALJ requested memoranda. The State notified the ALJ that it had no interest to defend, and Gibbons alone submitted a memorandum.

¶ 5 The ALJ then issued an award denying relief against Standard. The ALJ found in part that the ICA could never assert jurisdiction over a disability insurer such as Standard:

6. The Commission's jurisdiction to adjudicate claims for compensation, as provided by A.R.S. § 23–921(A) confers upon the Commission exclusive jurisdiction to determine all issues of law and fact relating to a workers' compensation claimant's entitlement to compensation benefits. *Rios v. Industrial Commission,* 120 Ariz. 374, 586 P.2d 219 (App.1978). However, it has been recognized that the Commission does not have jurisdiction over parties other than the injured worker and the employer thereof and its workers' compensation carrier: "[T]he Industrial Commission is not a court of general jurisdiction and there are no provisions in our statutes giving it jurisdiction over parties other than the employer, carrier and injured workman.…" *Arrowhead Press, Inc. v. Industrial Commission,* 134 Ariz. 21, 24, 653 P.2d 371, 374 (App.1982).

7. Applicant's post-hearing memorandum argues that A.R.S. § 23–1068(B) not only gives the Commission subject matter jurisdiction over the dispute regarding the amount of applicant's liability to Standard for repayment of STD benefits but also personal jurisdiction over Standard. Applicant further submits that *Moreno v. Industrial Commission,* 164 Ariz. 374, 793 P.2d 131 (App.1990), supports her position that the Commission not only has subject matter jurisdiction of the dispute but has personal jurisdiction over Standard, too. I disagree.

8. *Moreno's* facts are critically distinguishable from those here. In *Moreno* the Commission *had* personal jurisdiction over the self-insured employer, "an interested party" pursuant to A.R.S. § 23–901(9). The self-insured employer was the party in *Moreno* that was ordered to pay to an [sic] STD carrier amounts that the STD carrier had paid to the injured worker under the STD benefits policy. Although A.R.S. § 23–1068(B) provides that "any dispute as to the amount of the … credit against the … compensation benefits payable shall be resolved pursuant to the provisions of § 23–1061(J)," tacit in such statutory language is the requirement that the Commission may acquire personal jurisdiction over the parties. The Commission's authority

to resolve A.R.S. § 23–1068(B) disputes extends only to "interested parties" as defined by A.R.S. § 23–901(9). The ALJ summarily affirmed this award on administrative review.

¶ 6 Gibbons then timely filed this statutory special action. This court has jurisdiction under A.R.S. sections 12–120.21(A)(2) (1992),and 23–951(A), and Arizona Rules of Procedure for Special Actions 10 (1998). Although the State ·notified the ICA that it would not submit an answering brief, the ICA also did not file an answering brief. Consequently the matter has been submitted on Gibbons' opening brief.

¶ 7 On review, we first address whether to treat the ICA's failure to file an answering brief as a confession of error. Although the ICA generally may not appear as an advocate, it has discretion to appear when it has a "legitimate interest in appearing as an advocate ... to assist the Court in reaching a correct result where matters involving the general interest of the Commission in carrying out its statutory authority or policies are concerned." *Evertsen v. Industrial Comm'n,* 117 Ariz. 378, 382–83, 573 P.2d 69, 73–74 (App.1977), *approved and adopted* 117 Ariz. 342, 572 P.2d 804 (1977) (citation omitted). Here the ICA had standing to file a brief but chose not to do so.

¶ 8 When a debatable issue is raised on review, the failure to file an answering brief generally constitutes a confession of error. *See Bugh v. Bugh,* 125 Ariz. 190, 191, 608 P.2d 329, 330 (App.1980); *Evertsen,* 117 Ariz. at 383, 573 P.2d at 74. A reviewing court nevertheless has discretion to waive this general rule to address a purely legal issue that the court concludes should be resolved. *See Bugh,* 125 Ariz. at 191, 608 P.2d at 330; *Evertsen,* 117 Ariz. at 383, 573 P.2d at 74. This case presents such an issue. We accordingly exercise our discretion to waive confession of error and to address on the merits the ICA's jurisdiction over a disability insurer.

¶ 9 The ICA has exclusive jurisdiction to adjudicate claims for workers' compensation. *See* A.R.S. § 23–921(A); *Arrowhead Press, Inc. v. Industrial Comm'n,* 134 Ariz.

21, 24, 653 P.2d 371, 374 (App.1982). It alone may determine "issues of law and fact relating to a claimant's entitlement to compensation benefits." *Arrowhead,* 134 Ariz. at 24, 653 P.2d at 374.

¶ 10 Gibbons contends that she has raised an issue of law relating to her entitlement to compensation benefits under A.R.S. section 23–1068(B). This section exempts workers' compensation benefits from attachment, garnishment, and execution. It also specifies exceptions to this general exemption. *See* A.R.S. § 23–1068(B). One exception applies as follows:

> [I]f medical, wage loss or disability benefits are paid or otherwise provided by an employer to ... an employee for an injury ... for which medical or compensation benefits payable pursuant to this article have been denied ..., and such injury ... is subsequently determined to be compensable under this article, such employer *or the person authorized by such employer to provide such benefits shall be entitled to a direct payment out of, or a direct credit against,* the medical or compensation benefits payable under this article in the amount of the benefits previously paid or provided. *Any dispute as to the amount of direct payment or credit against the medical or compensation benefits payable shall be resolved pursuant to the provisions of § 23–1061, subsection J.*

*Id.* (emphasis added).

¶ 11 We agree with Gibbons that Standard was the "person" that the State authorized to pay short-term disability benefits to its employees within the meaning of section 23–1068(B). *Cf. Moreno v. Industrial Comm'n,* 164 Ariz. 374, 376, 793 P.2d 131, 133 (App. 1990) (interpreting statute to allow either employer or long-term disability insurer to recoup overpayment). We also agree that Standard paid benefits to her under the conditions specified in this statute. However, not every dispute concerning repayment of disability benefits falls within section 23–1068(B). Standard is entitled to claim a direct payment from or a direct credit against Gibbons' workers' compensation benefits. If, but only if, Standard has made such a claim

**112**

does the ICA acquire authority to resolve a dispute about the amount of the direct payment or credit under A.R.S. section 23–1061(J).

¶ 12 Gibbons concedes that Standard never claimed a direct payment from her retroactive workers' compensation disability benefits and that the State paid her these benefits. However, she contends that Standard has claimed a credit against the workers' compensation benefits that she received. But her repayment to Standard from her workers' compensation benefits does not constitute a direct credit within the meaning of section 23–1068(B). A "direct credit" in this context means "a direct credit against future benefits," an entitlement to a direct payment of future monthly workers' compensation disability benefits until the disability insurer has been repaid. *Moreno,* 164 Ariz. at 376, 793 P.2d at 133. When a claimant is paid retroactive and future workers' compensation benefits, a disability insurer's claim for repayment is purely contractual and outside the ICA's exclusive jurisdiction to adjudicate claims for workers' compensation.

¶ 13 Because the relevant part of A.R.S. section 23–1068(B) is an exception to the general exemption from attachment, garnishment, and execution, a comparison to attachment or garnishment jurisdiction is helpful. In jurisdiction of this type, also identified as "quasi-in rem type II" jurisdiction,

> the plaintiff does not claim a pre-existing interest in the property; rather, the plaintiff asserts another type of claim (*e.g.,* in contract or tort) against the defendant and seeks to establish an interest in the defendant's property as a basis for exercising jurisdiction over the defendant when personal jurisdiction is unavailable. In a type II action, the plaintiff typically claims that the defendant owes the plaintiff money, and the defendant's property is attached to satisfy the plaintiff's claim.

16 James Wm. Moore and Robert C. Casad, *Moore's Federal Practice 3D* § 108.70[2], at 108–107 (3rd ed.1999) (footnote omitted). For example, if we assume that a forum lacks jurisdiction over a creditor who could claim an interest in the debtor's property as a basis for jurisdiction over the debtor, and if the creditor has not claimed an interest in the debtor's property but the debtor wants the forum to adjudicate a separate contractual dispute with the creditor, potential quasi-in rem type II jurisdiction does not create jurisdiction over the creditor. Unless the creditor claims an interest in the debtor's property, the forum lacks jurisdiction over the creditor.

¶ 14 Gibbons' position compares to this hypothetical. Under A.R.S. section 23–1068(B), Standard could claim a direct payment from or direct credit against her workers' compensation benefits. Even though it never claimed a direct payment from or direct credit against her workers' compensation benefits, Gibbons attempted to invoke ICA jurisdiction over it to resolve her contractual dispute. The ICA lacked jurisdiction over Standard under these circumstances. *See, e.g., Arrowhead,* 134 Ariz. at 24, 653 P.2d at 374 (ICA "is not a court of general jurisdiction . . . .").

¶ 15 We must affirm an award that reaches the right result even if for the wrong reason. *See Salt River Project v. Industrial Comm'n,* 126 Ariz. 196, 200, 613 P.2d 860, 864 (App.1980). *A fortiori,* we must affirm when a narrower rationale supports the award. We therefore need not address the broader rationale stated in the award.

¶ 16 We accordingly affirm the award and decision upon review dismissing the A.R.S. section 23–1061(J) petition for lack of jurisdiction.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.