IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

ERNIE LUNA, JR.,
*Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

PIMA COUNTY,
*Respondent Employer,*

TRISTAR RISK MANAGEMENT,
*Respondent Insurer.*

No. 2 CA-IC 2013-0021
Filed December 22, 2014

---

SPECIAL ACTION – INDUSTRIAL COMMISSION
ICA Claim No. 95136728090
Insurer No. WCPWC95WW00410
LuAnn Haley, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Tretschok, McNamara & Miller, P.C., Tucson
By J. Patrick Butler
*Counsel for Petitioner Employee*

The Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

M. Ted Moeller, Tucson
*Counsel for Respondents Employer and Insurer*

---

**OPINION**

---

Presiding Judge Miller authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Espinosa concurred.

---

M I L L E R, Presiding Judge:

¶1         This statutory special action requires us to determine whether petitioner employee, Ernie Luna, Jr., is entitled to interest on temporary compensation benefits that were not timely paid to him.  We conclude that Arizona law requires payment of the interest and therefore set aside the administrative law judge's (ALJ) award.

**Factual and Procedural Background**

¶2         The following facts are undisputed.  In May 1995, Luna was employed by Pima County Wastewater Management and suffered a compensable injury to his back.  Respondents Pima County and Tristar Risk Management (collectively "Tristar") accepted the claim and paid benefits to Luna.  Luna's claim was subsequently closed in 1999 and reopened in 2009.  On March 30, 2011, Luna underwent an independent medical examination and the examining physicians opined, "the medically stationary point of maximum medical improvement ha[d] been reached."

¶3         In April 2011, Tristar issued a notice closing Luna's claim effective March 31, 2011, with a permanent disability.  Luna protested the closure of his claim and in March 2012, after hearings on the matter, the administrative law judge (ALJ) issued a decision, awarding Luna temporary disability compensation benefits "from September 30, 2009 until such time as the condition is determined to be medically stationary."  The Industrial Commission affirmed the ALJ's decision to keep the claim open, and this court affirmed the

award on appeal. *Pima County v. Indus. Comm'n*, No. 2 CA-IC 2012-0007, ¶ 1 (memorandum decision filed Jan. 28, 2013).

¶4 During the period that Luna was contesting Tristar's attempted closure of his claim, he had been receiving long-term disability benefits through the Arizona State Retirement System (ASRS). ASRS had contracted with Sedgwick Claims Management Services, Inc. for administration of the long-term disability income plan. Between March 31, 2011 and March 31, 2013, Sedgwick paid Luna $29,680.93 in long-term disability benefits.

¶5 In April 2013, after this court affirmed the ALJ's decision to keep the claim open, Luna filed a request for hearing, pursuant to A.R.S. § 23-1061(J), seeking his unpaid temporary compensation benefits from Tristar. In May 2013, Tristar determined the amount of temporary compensation benefits that it had owed Luna from March 31, 2011 to March 31, 2013. But Tristar withheld the majority of these funds to reimburse Sedgwick directly for long-term disability benefits it had paid during the same two-year period. Luna asserted that, pursuant to the long-term disability policy, he was responsible for reimbursing Sedgwick for overpayment, and he disputed Tristar's withholding of funds.

¶6 The parties subsequently stipulated that Tristar would pay Luna the amounts that were withheld for reimbursement to Sedgwick, totaling $19,786.43. The parties also agreed that any and all overpayments of long-term disability benefits were Luna's responsibility and that Luna would pay back all amounts owed to Sedgwick due to overpayment.

¶7 In her September 2013 decision and award, the ALJ approved the parties' stipulation and denied Luna's request for interest from March 31, 2011, to March 31, 2013, on the $19,786.43 owed him. The ALJ determined that because Luna had received long-term disability benefits from Sedgwick during the two-year period in question, Luna's monthly benefit payment was not delayed and, therefore, Tristar did not owe him interest. Furthermore, the ALJ "concluded that [Tristar] appropriately withheld monies from [Luna's] temporary compensation pursuant to A.R.S. Section 23-1068(B)(2) and would not be required to pay

[Luna] interest on those funds which are to be reimbursed to Sedgwick." Luna requested review and, in November 2013, the ALJ affirmed the decision. Luna then filed this special action; we have jurisdiction pursuant to A.R.S. § 12-120.21(A)(2).

**Discussion**

¶8        Luna argues the ALJ erred by determining he was not entitled to interest on his temporary compensation benefits. Tristar counters that the benefits were paid timely after the award granting them was issued and therefore no interest was owed.

¶9        We generally defer to the ALJ's factual findings, but where, as is the case here, the ALJ did not conduct an evidentiary hearing and the material facts are undisputed, the issue becomes a question of law, which we review de novo. *Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988); *Munoz v. Indus. Comm'n*, 234 Ariz. 145, ¶ 9, 318 P.3d 439, 442 (App. 2014). We also review questions of statutory interpretation de novo. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, ¶ 5, 252 P.3d 1036, 1038 (App. 2011). "When construing workers' compensation statutes, we favor interpretations that make the claimant whole." *Carbajal v. Indus. Comm'n*, 223 Ariz. 1, ¶ 10, 219 P.3d 211, 213 (2009); *see also Munoz*, 234 Ariz. 145, ¶ 9, 318 P.3d at 442 (Workers' Compensation Act liberally construed to effectuate remedial purpose).

¶10       Our supreme court has held that a workers' compensation claimant is entitled to interest under the general interest statute, A.R.S. § 44-1201(A), on benefits not timely paid. *See DKI Corp./Sylvan Pools v. Indus. Comm'n*, 173 Ariz. 535, 537, 845 P.2d 461, 463 (1993); *Tisdel v. Indus. Comm'n*, 156 Ariz. 211, 212-14, 751 P.2d 527, 528-30 (1988). In *DKI*, the court determined that interest accrues when (1) there is a legal indebtedness or other obligation to pay benefits and (2) there is notice of this obligation to pay. 173 Ariz. at 537, 845 P.2d at 463.

¶11       When examining whether there is a legal indebtedness or other obligation to pay benefits, we apply the liquidated-unliquidated test. *Id.* at 538, 845 P.2d at 464. "This test allows interest on 'liquidated' claims but not on 'unliquidated' claims." *Id.*,

*quoting La Paz Cnty. v. Yuma Cnty.*, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987) ("A party's entitlement in Arizona to prejudgment interest depends on whether the amount awarded is liquidated or unliquidated."). A claim is liquidated when "'the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.'" *Id., quoting La Paz Cnty.*, 153 Ariz. at 168, 735 P.2d at 778.

**¶12**      Our determination in this matter is also guided by this court's recent decision in *Stenz v. Industrial Commission*, 236 Ariz. 104, 336 P.3d 737 (App. 2014). In *Stenz*, the petitioner, a widow of the petitioner employee, filed a claim seeking death benefits from respondent insurer-carrier. *See id.* ¶ 2. The ALJ upheld the carrier's denial of her claim and this court reversed. *Id.* On remand, the petitioner was awarded death benefits and the carrier paid her claim, but did not pay any interest. *Id.* Petitioner requested a hearing, asserting she was entitled to interest on the unpaid death benefits for the four-year period between her husband's death and the carrier's payment. *Id.* ¶ 3.

**¶13**      This court determined that although a claim for death benefits "'[did] not create an obligation to pay [death] benefits'" because the petitioner had a burden to establish the carrier was obligated to pay the requested benefits, the ALJ's benefits award did create an obligation. *Id.* ¶¶ 14-16, *quoting DKI*, 173 Ariz. at 537, 845 P.2d at 463. We also concluded that death benefits were liquidated because they were "'susceptible to mathematical computation' and subject to a 'statutory payment schedule.'" *Id.* ¶ 15, *quoting DKI*, 173 Ariz. at 538, 845 P.2d at 464. We further held that the carrier had notice of its obligation to pay when the claim for death benefits was filed; therefore, interest on the death benefits began to accrue from when the carrier received notice of the petitioner's claim. *Id.* ¶ 18.

**¶14**      Applying the analytical framework outlined in *DKI* and *Stenz* to the instant case, we begin by examining whether there is a legal indebtedness or obligation to pay. Here, the ALJ determined that Luna's claim should remain open and that Luna was entitled to temporary total disability benefits under A.R.S. § 23-1045(A), in the amount of sixty-six and two-thirds percent of his already established

average monthly wage. The amount of temporary compensation benefits owed is set by statute based on the claimant's average monthly wage, *see* § 23-1045(A), and in that way is similar to the death benefits paid pursuant to A.R.S. § 23-1046(A)(2) in *Stenz*. 236 Ariz. 104, ¶ 18, 336 P.3d at 742. Accordingly, temporary benefits are "'susceptible to mathematical computation' and subject to a 'statutory payment schedule.'" *Id.* ¶ 15, *quoting DKI*, 173 Ariz. at 538, 845 P.2d at 464. Indeed, Tristar had been paying Luna temporary benefits, from September 30, 2009, up until it attempted to close his claim, effective March 31, 2011. Thus, the temporary benefits awarded to Luna were liquidated and constituted a legal indebtedness or other obligation to pay upon the ALJ's award. *See id.* ¶ 15.

**¶15** We next examine "when [Tristar] had 'notice of its obligation to pay.'" *Id.* ¶ 17, *quoting DKI*, 173 Ariz. at 537, 845 P.2d at 463. On April 20, 2011, Tristar issued a notice of claim status closing Luna's claim effective March 31, 2011, with a determination of permanent disability. Luna contested the closure and filed a request for hearing on May 4, 2011. Thus, for purposes of the liquidated-unliquidated test, Tristar had notice of its continuing obligation to pay in May 2011. In *Stenz*, we noted that the carrier did not have to wait for a formal determination of the claim and could have begun payments when it issued its notice of claim status. *Id.* Similarly, here, Tristar could have continued paying Luna temporary benefits after receiving notice that Luna contested the closure of his claim and before the Commission made its determination. *See* A.R.S. § 23-1061(G) ("insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission"); *see also Keeton v. Indus. Comm'n*, 27 Ariz. App. 302, 305, 554 P.2d 898, 901 (1976) ("[Section] 23-1061(G) vests carriers . . . with broad administrative discretion in processing claims and paying compensation.").

**¶16** In sum, § 23-1045(A) provides that, after an industrial injury causing temporary total disability, "[c]ompensation of sixty-six and two-thirds per cent of the average monthly wage shall be paid during the period of disability." Tristar first accepted Luna's

claim before it was closed and then reopened in 2009. After Tristar attempted to close the claim again in 2011, the ALJ determined that Luna's claim should remain open. Tristar received notice of its continuing obligation under § 23-1045(A) in May 2011, the benefits were for a liquidated sum, and Tristar did not pay the benefits to Luna until September 2013. As such, the benefits were not timely paid, and interest on those benefits began to accrue from the time Tristar received notice that Luna contested the closure. Given the time period involved in this appeal, Luna is entitled to interest on the unpaid benefits from May 4, 2011 to March 31, 2013.

¶17        Tristar asserts that interest is not payable on workers' compensation benefits withheld, pursuant to A.R.S. § 23-1068(B)(2), in order to repay a long-term disability carrier for overpayment of benefits. Section 23-1068(B)(2) states:

> If . . . disability benefits are paid or otherwise provided by an employer to . . . an employee for an injury or illness for which medical or compensation benefits payable pursuant to this article have been denied . . . and the injury or illness is subsequently determined to be compensable under this article, the employer or the person authorized by the employer to provide such benefits is entitled to a direct payment out of, or a direct credit against, the medical or compensation benefits payable under this article in the amount of the benefits previously paid or provided.

Tristar relies on *Washington Elementary School District v. Industrial Commission*, 196 Ariz. 67, 993 P.2d 468 (App. 2000), and *Moreno v. Industrial Commission*, 164 Ariz. 374, 793 P.2d 131 (App. 1990), to support its argument.

¶18        *Washington* and *Moreno* are inapposite. Both involved an employer reimbursing itself for overpayment of disability benefits by taking a direct credit against retroactive workers'

compensation benefits. *Washington*, 196 Ariz. 67, ¶ 4, 993 P.2d at 469-70 (employer took credit against workers' compensation benefits for overpayment of short-term disability benefits); *Moreno*, 164 Ariz. at 374-75, 793 P.2d at 131-32 (self-insured employer paid carrier for overpayment of long-term disability benefits; took credit against workers' compensation benefits).

¶19        Here, however, Tristar purported to withhold Luna's retroactive workers' compensation benefits to reimburse Sedgwick for overpayment of long-term disability benefits. We first note that Sedgwick is not a party to this special action and the Commission lacked personal jurisdiction over it. *See Gibbons v. Indus. Comm'n*, 197 Ariz. 108, ¶ 12, 3 P.3d 1028, 1032 (App. 1999) ("When a claimant is paid retroactive and future workers' compensation benefits, a disability insurer's claim for repayment is purely contractual and outside the [Commission's] exclusive jurisdiction to adjudicate claims for workers' compensation."); A.R.S. § 23-901(10) ("'Interested party' means the employer, the employee . . . the commission, the insurance carrier or their representative."). Second, Sedgwick's long-term disability policy, which is provided through ASRS and not Luna's employer, Pima County, requires that Luna fully refund Sedgwick for the amount of overpayment due to retroactive workers' compensation benefits. Thus, notwithstanding § 23-1068(B)(2), any obligation Luna owed to Sedgwick for overpayment of long-term disability benefits was wholly independent of the relationship Luna had with Tristar. *See Gibbons*, 197 Ariz. 108, ¶ 12, 3 P.3d at 1032. The fact that Luna received long-term disability benefits from a nonparty has no impact on our determination that the workers' compensation benefits were not timely paid.

¶20        Public policy considerations underlying the Workers' Compensation Act and the general interest statute support our conclusion here. "The purpose of the Act is 'to dispense, so far as possible, with litigation between employer and employee and to place upon industry the burden of compensation for injuries caused by the employment.'" *Stenz*, 236 Ariz. 104, ¶ 20, 336 P.3d at 743, *quoting Pressley v. Indus. Comm'n*, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951); *see also* Ariz. Const. art. XVIII, § 8. And an award of interest

under § 44-1201 acts to compensate the injured party, or in the workers' compensation context, the employee. *See Stenz*, 236 Ariz. 104, ¶ 20, 336 P.3d at 743; *cf. Dawson v. Withycombe*, 216 Ariz. 84, ¶ 99, 163 P.3d 1034, 1063 (App. 2007) ("An award of prejudgment interest serves the dual purpose of recompensing the victim and deterring defendants from dilatory litigation tactics."). Our supreme court has explained:

> Where money belonging to a party is not timely paid, interest is generally awarded. This is because the party entitled to use of the money has been deprived of that use, and the party retaining it has been unjustly enriched.

*La Paz Cnty.*, 153 Ariz. at 168, 735 P.2d at 778 (citations omitted). Requiring a workers' compensation carrier to pay interest on benefits not timely paid is in accord with these policy concerns.[1] *Stenz*, 236 Ariz. 104, ¶ 20, 336 P.3d at 743.

**¶21**        Moreover, as we explained in *Stenz*, "a good-faith dispute over liability does not prevent the award of interest on a liquidated claim." *Id.* ¶ 21; *see also Tisdel*, 156 Ariz. at 214, 751 P.2d at 530 ("Interest is not based on diligence or lack of diligence. Interest accrues and becomes payable when debt is due."). This is no less true where the carrier, in good faith, purports to withhold retroactive workers' compensation benefits in order to reimburse a third-party long-term disability insurer. Thus, the fact that Tristar

---

[1] We also reject Tristar's argument that Luna necessarily received a windfall should he be awarded interest. Luna's long-term disability policy may have been purchased by him, albeit through a group policy offered in connection with his employment. Tristar does not point to evidence that it or Pima County paid the premiums. Additionally, the policy was a wholly independent contractual relationship and has no impact on whether Luna is entitled to interest on workers' compensation benefits not timely paid. To hold otherwise would grant Tristar a windfall as it had use of the funds owed to Luna from March 2011 to March 2013.

withheld funds to reimburse Sedgwick directly for overpayment of long-term disability benefits does not affect our analysis.[2] *See Stenz*, 236 Ariz. 104, ¶ 21, 336 P.3d at 743. To hold otherwise would incentivize withholding of payment of workers' compensation benefits, thereby depriving a claimant of the money's use. *See id.*; *La Paz Cnty.*, 153 Ariz. at 168, 735 P.2d at 778.

**¶22** Tristar had the use of the money due Luna for his temporary total disability award, and Luna did not. "'We do not feel it unjust to require the carrier to pay interest on [benefits] it should have paid'" before the ALJ's March 2012 award. *Stenz*, 236 Ariz. 104, ¶ 22, 336 P.3d at 743, *quoting Tisdel*, 156 Ariz. at 214, 751 P.2d at 530 (alteration in *Stenz*). Luna "'not only lost the use of the money when the carrier failed to pay the award, but also the "time-value" of the money.'" *Id.*, *quoting Tisdel*, 156 Ariz. at 214, 751 P.2d at 530. Section 44-1201(A) provides Luna interest on his temporary benefits award from the date Tristar received notice of his intention to dispute the closure of his claim. *See id.*; *see also DKI*, 173 Ariz. at 539, 845 P.2d at 465; *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529.

**Disposition**

**¶23** For the foregoing reasons, the ALJ's award denying Luna relief is set aside.

---

[2] Particularly, when, as here, the funds were not actually distributed to Sedgwick.