IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE
_____

STATE OF ARIZONA, *Appellant,*

*v.*

ANTHONY JEROME WOODS, *Appellee.*

No. 1 CA-CR 13-0655

FILED 2-3-2015
_____

Appeal from the Superior Court in Maricopa County
No. CR2011-153603-001
The Honorable Bruce R. Cohen, Judge

**REVERSED AND REMANDED**
_____

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Arthur Hazelton
*Counsel for Appellant*


Anthony Jerome Woods, Tucson
*Appellee*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**H O W E**, Judge:

¶1        The State of Arizona appeals the superior court's grant of Anthony Jerome Woods's motion to suppress evidence of marijuana packages discovered in his car. The superior court ruled that a police officer did not have reasonable suspicion to detain Woods for a narcotics dog sniff of his car despite Woods's extensive criminal history of drug transportation and the officer's testimony that circumstances indicated that Woods's actions were suspicious. Upon our de novo review whether the undisputed facts constitute reasonable suspicion, we hold that the police officer had reasonable suspicion to detain Woods for the dog sniff. We therefore reverse the superior court's ruling and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2        At the time of the evidentiary hearing, Officer McWhirter had served the Arizona Department of Public Safety as a patrol officer for more than 11 years. He had more than "200 some hours" of classroom training on drug interdiction and spent two months assigned to the Casa Grande drug canine unit riding with canine officers and "specifically working interdictions." During his career, he had personally seized "a lot of drug loads" and "a lot of human smuggling loads." In 2010 alone, he interdicted 1,500 pounds of marijuana and 14 pounds of cocaine and seized "between 50 and 75 vehicles" for human smuggling.

¶3        At 5:45 a.m. on November 23, 2010, Officer McWhirter stopped Woods on Interstate 10 in Chandler for swerving his car and traveling at varying speeds. The officer approached Woods to obtain his driver's license and vehicle registration, which Woods provided, along with a rental car agreement. When the officer asked Woods where he was going, Woods stated that he was going to visit a friend in Phoenix who had cancer. Woods added that he was taking his friend to "rehab," but could not identify which hospital or the type of rehabilitation. Woods's answers "confused" and "perplexed" Officer McWhirter and made him suspicious.

¶4        Seeing no personal belongings in the car, Officer McWhirter asked Woods if he planned to stay in Phoenix. Woods stated that he did not. The officer then ran a records check, which revealed that Woods had "a very, very big rap sheet with drugs" and "an extremely extensive background" of transporting and manufacturing drugs in Chicago.

¶5        Officer McWhirter then asked Woods for consent to search his car, and Woods agreed to the search and signed a consent form. The officer discovered two plain and unaddressed cardboard shipping boxes in the trunk. The boxes were sealed with tape and had a "very solid weight," weighing between five and ten pounds. The officer believed that the boxes were consistent with packages used for transporting drugs. When the officer asked Woods about the contents of the boxes, Woods replied that they were "Christmas presents" that he was going to ship once he was in Phoenix. He asked Woods why the boxes "didn't have any address labels or anything" and were "just completely plain." Woods "didn't have a good reason why they weren't labeled" and merely said that he was going to do it in Phoenix. These statements and the discovery of the boxes further raised Officer McWhirter's suspicions about Woods's activity. He asked if he could open the packages, but Woods refused.

¶6        Officer McWhirter then requested that a narcotics dog be brought to the scene. No city police canine unit was on duty that early in the morning; the closest canine unit was in Maricopa. When that unit arrived about 40 minutes later, the narcotics dog sniffed the car and alerted on the trunk and bit one of the boxes. A search of the boxes revealed marijuana. The State subsequently charged Woods with one count of sale or transportation of marijuana and alleged that Woods had several historical prior convictions and committed the offense while on community supervision release.

¶7        Woods moved to suppress evidence of the marijuana. Although he did not contest the validity of the initial stop, he argued that once he refused to allow the officer to search the boxes, reasonable suspicion did not exist to detain him until the narcotics dog arrived. He also argued the length of his detention awaiting the narcotics dog was unreasonable. At the subsequent evidentiary hearing, the superior court heard testimony from Officer McWhirter about the stop and the search.

¶8        The superior court suppressed the evidence. Although the court found that the initial stop and subsequent search of the car pursuant to Woods's consent were lawful, it ruled that once Woods refused to allow Officer McWhirter to search the boxes, Officer McWhirter had no

information "to suggest a basis for reasonable suspicion as to the transportation of illegal substances." The court acknowledged that Officer McWhirter believed that "the consistency and density of the boxes w[ere] consistent with his experience with packaging of illegal substances," but without any other evidence found that "his beliefs were far more akin to speculation than reasonable suspicion." The court found that the time of year—late November—and the location of the boxes—the car's trunk— were consistent with Woods's statement that the boxes were Christmas gifts. The court noted that "but for" the discovery of Woods's prior criminal history of drug activity, "the officer would not have found anything to be suspicious about the packages."

¶9          Following the suppression ruling, the State dismissed the charges and timely appealed.[1]

## DISCUSSION

¶10          The State argues that the superior court erred by ruling that Officer McWhirter did not have reasonable suspicion to detain Woods to obtain a dog sniff of his rental car. In reviewing a superior court's ruling that a detention and consequent search violated the Fourth Amendment, we defer to the superior court's factual findings, but review de novo mixed questions of law and fact and the superior court's ultimate legal conclusions about whether the totality of the circumstances warranted an investigative detention and whether its duration was reasonable. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *State v. Teagle*, 217 Ariz. 17, 22 ¶ 19, 170 P.3d 266, 271 (App. 2007).

¶11          A police officer may make a limited investigatory stop if the officer has an "articulable, reasonable suspicion" that "the suspect is involved in criminal activity." *Teagle*, 217 Ariz. at 22–23 ¶ 20, 170 P.3d at 271–72. "By definition, reasonable suspicion is something short of probable cause." *State v. O'Meara*, 198 Ariz. 294, 296 ¶ 10, 9 P.3d 325, 327 (2000). While law enforcement must have more than a simple hunch or an "inchoate and unparticularized suspicion," reasonable suspicion requires a "minimal

---

[1]          Woods did not file an answering brief. "When a debatable issue is raised on [appeal], the failure to file an answering brief generally constitutes a confession of error." *Gibbons v. Indus. Comm'n of Ariz.*, 197 Ariz. 108, 111 ¶ 8, 3 P.3d 1028, 1031 (App. 1999). We may, however, exercise our "discretion to waive this general rule to address a purely legal issue." *Id.* Because "[t]his case presents such an issue," we address the merits of the State's appeal. *Id.*

4

level of objective justification" and is "considerably less than proof of wrongdoing by a preponderance of the evidence." *Teagle*, 217 Ariz. at 24 ¶¶ 25–26, 170 P.3d at 273. "In deciding whether the police have a particularized and objective basis for suspecting that a person is engaged in criminal activity, we look at the 'whole picture,' or the 'totality of the circumstances,'" *O'Meara*, 198 Ariz. at 295 ¶ 7, 9 P.3d at 326. Considering the totality of the circumstances permits officers to draw on their specialized training—as well as their common sense knowledge about human behavior—to form their particularized and articulable basis for a stop. *Teagle*, 217 Ariz. at 24 ¶ 26, 170 P.3d at 273. "There is a 'gestalt' to the totality of the circumstances test." *O'Meara*, 198 Ariz. at 296 ¶ 10, 9 P.3d at 327.

**¶12**　　　A suspect's criminal history is part of the totality of the circumstances. It informs an officer's judgment about whether criminal activity may be afoot and "may cast a suspicious light on . . . seemingly innocent behavior." *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010); *see also United States v. Chamberlin*, 644 F.2d 1262, 1265 (9th Cir. 1980); *State v. Lee*, 658 N.W.2d 669, 678 (Neb. 2003). Although such history cannot alone establish reasonable suspicion to support detention, *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013), "[i]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus," *United States v. White*, 584 F.3d 935, 951 (10th Cir. 2009). Accordingly, a suspect's criminal history is part of the "totality of the circumstances" that informs an officer's reasonable suspicion of criminal activity.

**¶13**　　　In reviewing whether reasonable suspicion existed under the totality of the circumstances, "we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions." *Teagle*, 217 Ariz. at 24 ¶ 26, 170 P.3d at 273. Police officers have specialized training and experience that allows them to make inferences from and deductions about cumulative information that "might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). The facts as a police officer observes them "must be seen and weighed . . . as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418; *see also Ornelas*, 517 U.S. at 695 (stating that reasonable suspicion and probable cause "are commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act'") (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

¶14 According proper deference to Officer McWhirter's expertise and experience and examining the totality of the circumstances of his encounter with Woods, we find that Officer McWhirter had reasonable suspicion to detain Woods until the narcotics dog arrived. Officer McWhirter had extensive expertise and experience in detecting the transportation of drugs. He had served as a DPS patrol officer for more than 11 years and had personally seized "a lot" of drug and human smuggling loads. In one year, he had interdicted 1,500 pounds of marijuana.

¶15 Using his expertise and experience, Officer McWhirter had particularized and objective reasons for suspecting that Woods was transporting illegal drugs. Woods was driving a rental car with no personal belongings. His explanations for his trip so early in the morning—in one breath stating that he was going to visit his friend who had cancer and then in the next stating that he was taking his friend for "rehab"—were confusing and contradictory. Woods had an extensive criminal history of transporting illegal drugs. In the trunk of the car, Woods had two unlabeled boxes taped shut that had solid weights that were consistent with drug packages. These facts gave Officer McWhirter reason to suspect that Woods may be transporting illegal drugs and justified detaining Woods until the narcotics dog arrived.

¶16 We review de novo the legal issue whether the facts as the superior court found them constitute reasonable suspicion. *Ornelas*, 517 U.S. at 699. As the superior court noted in its ruling, the facts were undisputed; the question was what the facts meant. The superior court ruled that in its view, Officer McWhirter's beliefs about the meaning of the facts "were far more akin to speculation than reasonable suspicion." That is the ultimate legal conclusion, however. Upon our de novo review of the record and considering that Woods was using a rental car with no personal belongings inside, provided confusing explanations about the purpose of his trip, had an extensive criminal history of drug transportation, and had two unlabeled taped boxes in the trunk of his car that had a weight and density consistent with drug packages, we find that under the totality of the circumstances, Officer McWhirter had reasonable suspicion to detain Woods until the narcotics dog arrived.

¶17 We therefore reverse the superior court's ruling suppressing the evidence. Because the superior court did not rule on Woods's motion that the length of his detention was unreasonable, we remand to the superior court for further proceedings.

**CONCLUSION**

¶18        For these reasons, we reverse the ruling suppressing the evidence and remand for proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama