OPINION
VÁSQUEZ, Judge.
¶ 1 In this statutory special action, petitioner Elizabeth Stenz, widow of Charles Stenz, the petitioner employee, challenges the administrative law judge’s (ALJ) award denying her interest on the death benefits she received four years after Charles’s death. She argues Arizona law requires payment of the interest. We agree and set aside the award.
Factual and Procedural Background
¶ 2 We view the facts in the light most favorable to upholding the award. Polanco v. Indus. Comm’n, 214 Ariz. 489, ¶ 2, 154 P.3d 391, 392-93 (App.2007). But, here, the facts are not in dispute. Charles was employed by respondent employer City of Tucson and suffered a compensable injury in 2005. Respondent insurer-carrier Pinnacle Risk Management accepted the claim and paid benefits to Charles. After Charles died on April 23, 2009, Elizabeth filed a claim seeking death benefits under AR.S. § 23-1046(A). Pinnacle denied the claim, contending Charles’s death was not work related, and the ALJ upheld the denial. This court set aside the award upholding the denial. Stenz v. Indus. Comm’n, 2 CA-IC 2010-0016, ¶ 14, 2011 WL 3807575 (memorandum decision filed Aug. 25,2011). After a hearing on remand, the ALJ issued his decision and award granting Elizabeth’s claim for death benefits on December 26, 2012. On March 5, 2013, the ALJ affirmed that award. The following month, Pinnacle paid the benefits dating back to Charles’s death but did not pay any interest.
¶ 3 Elizabeth requested a hearing pursuant to AR.S. § 23-1061(J), contending she was entitled to interest on the unpaid death benefits for the four-year period between Charles’s death and their payment. Pinnacle asserted that no interest was due because the claim was paid timely on April 23, 2013, following the ALJ’s December 26, 2012 award. Based on the parties’ legal memo-randa, the ALJ determined that Pinnacle “did not become liable to pay [death] benefits until [the] March 5, 2013 Decision Upon Review became final,” that the payment of the benefits was not untimely, and that no interest was due. Elizabeth filed this special action, and we have jurisdiction pursuant to A.R.S. §§ 23-951 and 12-120.21(A)(2). See also Ariz. R.P. Spec. Actions 10.
Discussion
¶4 Elizabeth argues the ALJ erred by determining she was not entitled to interest on her death benefits. Pinnacle counters that the benefits were paid timely after the award granting them was issued and therefore no interest was owed.
¶ 5 We generally defer to the ALJ’s factual findings, but where, as is the case here, the ALJ did not conduct an evidentiary hearing and the material facts are undisputed, the issue becomes a question of law, which we review de novo. Finnegan v. Indus. Comm’n, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988). We also review questions of statutory interpretation de novo. Hahn v. Indus. Comm’n, 227 Ariz. 72, ¶ 5, 252 P.3d 1036, 1038 (App.2011). “When construing workers’ compensation statutes, we favor interpretations that make the claimant whole.” Carbajal v. Indus. Comm’n, 223 Ariz. 1, ¶ 10, 219 P.3d 211, 213 (2009); see also Munoz v. Indus. Comm’n, 234 Ariz. 145, ¶ 9, 318 P.3d 439, 442 (App.2014) (Workers’ Compensation Act liberally construed to effectuate remedial purpose).
*107 ¶ 6 Each party relies on Tisdel v. Industrial Commission, 156 Ariz. 211, 751 P.2d 527 (1988), and DKI Corp./Sylvan Pools v. Industrial Commission, 173 Ariz. 535, 845 P.2d 461 (1993), to support its position. We therefore turn to those eases, which we agree guide our decision here.
¶ 7 In Tisdel, the carrier issued its notice of claim status in 1971, did not deny coverage, and suggested the claimant would begin receiving permanent partial disability benefits. 156 Ariz. at 212, 751 P.2d at 528. Neither the claimant nor the carrier followed up with that notice, and no benefits were paid at the time. Id. Thirteen years later, the claimant sustained a second injury and hired counsel to assist with that claim; counsel discovered the prior oversight and sought payment of the past due benefits from the 1971 claim. Id. The carrier paid the full amount of benefits due on the 1971 claim but refused to pay interest. Id.
¶ 8 Our supreme court concluded that a workers’ compensation claimant is owed interest under the general interest statute, AR.S. § 44-1201, on benefits not timely paid. Tisdel, 156 Ariz. at 212-13, 751 P.2d at 528-29. That statute states, in relevant part, that “[i]nterest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum.” § 44-1201(A).[2] In determining when interest began to accrue, the court noted the carrier had not denied coverage and “[cjounsel for both parties stipulated that it was an error [for the carrier] not to have issued a notice of permanent disability in December of 1971.” Tisdel, 156 Ariz. at 212, 751 P.2d at 528. The court further noted that AR.S. § 23-1047(A), the statute establishing the procedure for payment of benefits in that case, provides that an “employer or insurance carrier may commence payment of a permanent disability award without waiting for a determination under subsection B of this section.” Tisdel, 156 Ariz. at 213, 751 P.2d at 529. Because “the carrier could have begun payments as of 23 December 1971 when it issued its notice of claims status,” the court concluded “that the legal obligation for interest occurred on 23 December 1971 when the carrier had notice of its obligation to pay permanent benefits.” Id.
¶ 9 Unlike the carrier’s acceptance of the claim in Tisdel, the carrier in DKI denied the claimant’s petition to reopen his claim for benefits. 173 Ariz. at 536, 845 P.2d at 462. The claimant protested the denial with the Industrial Commission and requested interest on any benefits ultimately awarded. Id. The AL J determined the claimant had a new, additional, or previously undiscovered injury and awarded benefits. Id. In addition, the ALJ awarded the claimant interest beginning from the filing of the petition to reopen to the date of the award. Id.
¶ 10 On review, our supreme court first addressed the availability of interest under the Workers’ Compensation Act, restating its holding in Tisdel that a claimant awarded workers’ compensation benefits is entitled to interest, pursuant to § 44-1201(A), on any past-due benefits. DKI, 173 Ariz. at 537, 845 P.2d at 463. In determining when interest begins to accrue, the court noted that, “[although factually distinguishable, Tisdel’s legal principle applies to this case: interest only begins to accrue when (1) there is a legal ‘indebtedness ... or other obligation’ to pay benefits and (2) when the earner has ‘notice of [this] obligation to pay.’ ” Id., quoting Tisdel, 156 Ariz. at 213, 751 P.2d at 529 (alterations in DKI).
¶ 11 The court then applied this legal principle to consider whether simply filing the petition to reopen created an indebtedness or obligation. Id. The court determined that, unlike the carrier’s notice of claim status in Tisdel, a petition to reopen “does not create an obligation to pay benefits” because the claimant “must show a ‘new, additional or previously undiscovered temporary or permanent condition’ ” before the Commission “has authority to even reopen the claim, let alone to determine that an employer or carrier is obligated to pay any requested bene *108 fits.” Id., quoting § 23-1061(H). Accordingly, citing Tisdel, the court concluded the claimant in DKI was not entitled to interest computed from filing the petition to reopen. Id.
¶ 12 Next, the court considered “the liquidated-unliquidated test,” which “generally applies in deciding what constitutes an ‘indebtedness ... or other obligation’ so that interest begins to accrue.” Id. at 538, 845 P.2d at 464. The court noted “[t]his test allows interest on ‘liquidated claims’ but not on ‘unliquidated’ claims.” Id. Liquidated means “ ‘the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.’ ” Id., quoting La Paz County v. Yuma County, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987).
¶ 13 The court further noted that, in Tis-del, the claim “was for scheduled benefits, meaning that no loss of earning capacity determination was required.” Id., citing A.R.S. § 23-1044(B). “If Tisdel’s average monthly wage was susceptible to mathematical computation and applied to the statutory payment schedule in 1971, Tisdel’s claim would have been liquidated at that time.” Id. The court thus concluded “the ‘obligation’ would have come into existence when the [carrier’s] notice of claim status was issued— in 1971 — and the liquidated-unliquidated test explains Tisdel.” Id. Addressing the facts in DKI, the court observed that the initial award “did not contain a specific amount of benefits due” and that the record did not contain any “indication that the amount of benefits could have been accurately determined when the initial award was entered.” Id. Consequently, the court concluded the benefits were unliquidated and the ALJ erred in awarding the claimant interest from the date the petition to reopen was filed. Id. at 538-39, 845 P.2d at 464-65.
¶ 14 It is against this backdrop that we consider whether Elizabeth is entitled to interest on the death benefits she was awarded under § 23-1046.[3] We first must determine when Pinnacle’s “legal ‘indebtedness ... or other obligation’ to pay [death] benefits” to Elizabeth arose. DKI, 173 Ariz. at 537, 845 P.2d at 463, quoting Tisdel, 156 Ariz. at 213, 751 P.2d at 529. Here, unlike the carrier in Tisdel, Pinnacle had denied Elizabeth’s claim, disputing that Charles’s death resulted from an accident arising out of and in the corarse of his employment. Similar to the petition to reopen in DKI, a claim for death benefits “does not create an obligation to pay benefits.” Id. at 537, 845 P.2d at 463. Either the carrier must acknowledge, or the claimant must establish, the decedent was “killed by accident arising out of and in the course of his employment,” AR.S. § 23-1021, the claimant is a dependent entitled to death benefits, A.R.S. § 23-1064, and, in some instances, the degree of the claimant’s dependency, § 23-1046(A)(5). If the carrier fails to acknowledge its obligation to pay the benefits, the claimant must establish that obligation “before the Commission has authority ... to determine that an employer or carrier is obligated to pay any requested [death] benefits.” DKI, 173 Ariz. at 537, 845 P.2d at 463.
¶ 15 Here, the ALJ determined Elizabeth was entitled to death benefits under § 23-1046. Pinnacle does not challenge that determination on appeal. The question remains whether the death benefits are liquidated or unliquidated under the test DKI announced. The amount of death benefits owed is set by statute based on the decedent’s average monthly wage, see § 23-1046(A)(2), and in that way is similar to the permanent partial disability benefits paid pursuant to § 23-1044(B)(21) in Tisdel. As such, death benefits are “susceptible to mathematical computation” and subject to a “statutory payment schedule.” DKI, 173 Ariz. at 538, 845 P.2d at 464. Thus, the death benefits Elizabeth was awarded were liquidated and constituted a legal indebtedness or other obligation to pay upon the ALJ’s award. See id. at 538-39, 845 P.2d at 464-65.
¶ 16 Our concurring colleague concludes § 23-1046(A) alone creates Pinnacle’s *109 obligation to pay. See infra ¶¶ 27-28. The issue presented here, like in Tisdel and DKI, is the claimant’s entitlement to interest accrued before the award, or pre-judgment interest. Although we agree generally that § 23-1046(A) entitles Elizabeth to such interest under the liquidated-unliquidated test, a further step is necessary before Pinnacle’s obligation to pay is established. This is because, just as in DKI, but unlike in Tisdel, Pinnacle did not accept Elizabeth’s claim. See DKI, 173 Ariz. at 538, 845 P.2d at 464 (discussing § 23-1044(B) as basis for liquidated claim in Tisdel, where carrier accepted claim). Pre-judgment interest, as its name implies, is interest ending upon the entry of judgment. See Metzler v. BCI Coca-Cola Bottling Co., 230 Ariz. 26, ¶ 7, 279 P.3d 1188, 1190 (App.2012) (“[T]he term ‘prejudgment’ in ‘prejudgment interest’ necessarily implies a period ending at judgment.”). Thus, a party generally is not entitled to pre-judgment interest until that party obtains a judgment in his or her favor. In the workers’ compensation setting, that “judgment” is either the ALJ’s benefits award, based on a determination that the claimant established the claim or, as in Tisdel, the earner’s acceptance of the claim.
¶ 17 Accordingly, next we must determine “when [Pinnacle] had ‘notice of its obligation to pay.’ ” DKI, 173 Ariz. at 537, 845 P.2d at 463, quoting Tisdel, 156 Ariz. at 213, 751 P.2d at 529. Elizabeth’s claim for death benefits was filed with the Commission on September 21, 2009, sent to Pinnacle on October 21, 2009, and denied by Pinnacle on October 29, 2009. Thus, for purposes of the liquidated-unliquidated test, Pinnacle had notice of this obligation to pay in October 2009. In Tisdel, the court noted that under the statute at issue in that case, § 23-1047(A), the carrier did not have to wait for a formal determination of the claim and, instead, could have begun payments when it issued its notice of claim status. Tisdel, 156 Ariz. at 213, 751 P.2d at 529. Section 23-1046(A) does not contain the same provision as § 23-1047(A), which allows a carrier to begin payments without waiting for a determination by the Commission. However, § 23-1061(G) provides, in relevant part, that “the insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission.” Thus, under § 23-1061(G), Pinnacle could have begun payments to Elizabeth after receiving notice she had filed her claim for death benefits and before the Commission made its determination. See Keeton v. Indus. Comm’n, 27 Ariz.App. 302, 305, 554 P.2d 898, 901 (1976) (“§ 23-1061(G) vests carriers ... with broad administrative discretion in processing claims and paying compensation.”).
¶ 18 In sum, § 23-1046(A) provides that, after an industrial injury causing death, compensation known as a death benefit “shall be payable in the amount, for the period, and to and for the benefit of ... the surviving spouse.” The ALJ determined Elizabeth had established her claim under the statute, Pinnacle received notice of the claim in October 2009, the benefits were for a liquidated sum, and Pinnacle did not pay the benefits until April 23, 2013. We therefore conclude Elizabeth’s death benefits constitute a legal indebtedness or other obligation under § 44-1201(A). The benefits were not paid timely, and interest on those benefits began to accrue from the time Pinnacle received notice of Elizabeth’s claim. See Tisdel, 156 Ariz. at 212-13, 751 P.2d at 528-29; DKI, 173 Ariz. at 537, 845 P.2d at 463.
¶ 19 At oral argument, Pinnacle argued that, except as in Tisdel where the carrier accepts a claim, a claimant is entitled only to post-award interest in the workers’ compensation setting. But that position is counter to our supreme court’s analysis in DKI. In discussing “what constitutes an ‘indebtedness ... or other obligation’ so that interest begins to accrue,” DKI, 173 Ariz. at 538, 845 P.2d at 464, the court cited cases dealing with pre-judgment interest, see Schade v. Diethrich, 158 Ariz. 1, 14, 760 P.2d 1050, 1063 (1988); La Paz County, 153 Ariz. at 168, 735 P.2d at 778; Fleming v. Pima County, 141 Ariz. 149, 155-56, 685 P.2d 1301, 1307-08 (1984). And, courts specifically use the liquidated-unliquidated test to determine whether parties are entitled to pre-judgment — or, as is the ease here, pre-award — interest. See John C. Lincoln Hosp. & Health Corp. v. *110 Maricopa County, 208 Ariz. 532, ¶¶ 39-40, 96 P.3d 530, 542 (App.2004); Alta Vista Plaza Ltd. v. Insulation Specialists Co., 186 Ariz. 81, 82-83, 919 P.2d 176, 177-78 (App.1995).
¶ 20 Our conclusion is supported by the public policy considerations underlying the Workers’ Compensation Act and § 44-1201. The purpose of the Act is “to dispense, so far as possible, with litigation between employer and employee and to place upon industry the burden of compensation for injuries caused by the employment.” Pressley v. Indus. Comm’n, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951); see also Ariz. Const, art. XVIII, § 8. And, an award of interest under § 44-1201 serves to compensate the injured party, which in the workers’ compensation setting is the employee or his dependents. Cf. Dawson v. Withycombe, 216 Ariz. 84, ¶ 99, 163 P.3d 1034, 1063 (App.2007) (“An award of prejudgment interest serves the dual purpose of recompensing the victim and deterring defendants from dilatory litigation tactics.”). As our supreme court has explained:
Where money belonging to a party is not timely paid, interest is generally awarded. This is because the party entitled to use of the money has been deprived of that use, and the party retaining it has been unjustly enriched.
La Paz County, 153 Ariz. at 168, 735 P.2d at 778 (citation omitted). Awarding pre-award interest to a workers’ compensation claimant when the carrier fails to pay benefits timely comports with these policy concerns.
¶21 Moreover, a good-faith dispute over liability does not prevent the award of interest on a liquidated claim. Precision Heavy Haul, Inc. v. Trail King Indus., Inc., 224 Ariz. 159, ¶ 11, 228 P.3d 895, 898 (App. 2010); John C. Lincoln Hosp., 208 Ariz. 532, ¶ 40, 96 P.3d at 544; see also Tisdel, 156 Ariz. at 214, 751 P.2d at 530 (“Interest is not based on diligence or lack of diligence. Interest accrues and becomes payable when the debt is due.”). Thus, that Pinnacle initially challenged Elizabeth’s entitlement to the benefits does not affect our analysis. And, permitting carriers to avoid paying interest on liquidated benefits from the time they are notified of a claim provides carriers a significant disincentive to honor legitimate claims, as there would be no penalty associated with contesting payment until a final award is issued. This runs counter to Arizona’s public policy of speedy resolution of these claims, a right our Constitution guarantees injured workers in exchange for requiring them to forego their rights to maintain a tort action to recover damages for those injuries. Ariz. Const, art. XVIII, § 8; see also Grammatico v. Indus. Comm’n, 208 Ariz. 10, ¶ 7, 90 P.3d 211, 213 (App.2004).
¶ 22 Pinnacle had the use of the death benefit money, and Elizabeth did not. “We do not feel it unjust to require the earner to pay interest on [benefits] it should have paid” before the ALJ’s 2012 award. Tisdel, 156 Ariz. at 214, 751 P.2d at 530. Elizabeth “not only lost the use of the money when the carrier failed to pay the award, but also the ‘time-value’ of the money.” Id. Under § 44-1201(A), Elizabeth is due interest on her death-benefits award pursuant to § 23-1046(A) from the date Pinnacle received notice of her claim. See Tisdel, 156 Ariz. at 213, 751 P.2d at 529; see also DKI, 173 Ariz. at 539, 845 P.2d at 465.
Disposition
¶ 23 For the foregoing reasons, the ALJ’s award denying Elizabeth relief is set aside.

. Section 44-1201(A) previously provided that "[i]nterest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum.” 2011 Ariz. Sess. Laws, ch. 99, § 15. We cite the current version of the statute. See DKI, 173 Ariz. at 537, 845 P.2d at 463 (omitting “judgment” language from discussion of§ 44-1201 (A)).

. Section 23-1046 defines the compensation payable in case of an industrial injury causing death; prescribes the amount payable and the duration of payments; and identifies the beneficiaries entitled to receive such compensation pursuant to A.R.S. § 23-1021.