NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JAMES A. MONROE, an unmarried man, and KIMBERLEY MONROE
PIRTLE, *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

JAMES L. GAGAN and JANE DOE GAGAN, husband and wife,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 13-0273
FILED 6-25-2015

---

Appeal from the Superior Court in Maricopa County
No. CV2007-016208 and CV2007-016537
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

---

COUNSEL

By James A. Monroe, Kimberley Monroe Pirtle, Scottsdale
*In Propria Persona Plaintiffs/Appellants/Cross-Appellees*

Law Office of Lyndon B. Steimel, Scottsdale
By Lyndon B. Steimel
and
Brian Custy, Merrillville, IN
*Co-Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

---

**G E M M I L L**, Judge:

¶1　　　　This appeal and cross appeal arise from a judgment in favor of Plaintiffs/Appellants/Cross-Appellees James A. Monroe ("Monroe") and Kimberley Monroe Pirtle. For the following reasons, we affirm the judgment, with the exception that we vacate the trial court's denial of prejudgment interest and remand for entry of an amended judgment that includes prejudgment interest.

**BACKGROUND**

¶2　　　　In 1994, Defendant/Appellee/Cross-Appellant James L. Gagan obtained a $1.7 million judgment against Monroe in an Indiana federal court. Enforcement of this judgment led to a United States Marshal's sale of Monroe's Scottsdale property in November 2006, at which time Gagan purchased the property with a $560,000 credit bid. Gagan received a marshal's deed to the property in May 2007, at that time paying approximately $8,000 in marshal's costs and approximately $104,000 to satisfy Monroe's mortgage.

¶3　　　　Monroe sued Gagan in August 2007, seeking declaratory judgment, quiet title, and damages for his eviction from the Scottsdale property. Summary judgment was granted in Gagan's favor in 2010, from which Monroe appealed. Monroe and Pirtle also filed two lis pendens over the course of litigation, each of which was quashed by the trial court.

¶4　　　　In *Monroe v. Gagan*, 1-CA-CV 10-0589, 2011 WL 2555736 (Ariz. App. June 28, 2011), this court affirmed summary judgment in Gagan's favor on most of Monroe's claims, remanding on the issues of whether Monroe was entitled to payment of a homestead exemption from the proceeds of the marshal's sale and what, if any, offsets might be deducted from the exemption. *Id.* at *7, ¶26. The trial court then held a bench trial, ultimately ruling that Monroe was entitled to a homestead exemption under Arizona Revised Statutes ("A.R.S.") sections 33-1101 and -1105. The trial court also decided that Gagan had proved waste of the property

2

justifying offsets to the $150,000 homestead exemption in the amount of $36,595.24. Judgment was entered in 2013 in Monroe's favor for $113,404.76, plus post-judgment interest until paid. Prejudgment interest was not awarded. Monroe timely appealed, and Gagan timely cross-appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## ANALYSIS

### I.       Monroe's Appeal

#### A.       Trial Court's Interpretation of A.R.S. § 33-1101(c)

**¶5**        Monroe first contends that the trial court erred in applying A.R.S. § 33-1101(c), but Monroe does not develop this argument or cite any authority as required by the Arizona Rules of Civil Appellate Procedure. *See* Ariz. R. Civ. App. P. 13(a)(6) (requiring a party to support an argument with the "reasons therefor, with citations to the authorities, statutes and parts of the record relied on"). We therefore decline to address this issue. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (holding that a party waived an issue by only mentioning it in passing in the opening brief, citing no supporting legal authority, and failing to further develop the argument).

#### B.       Prejudgment Interest and Post-Judgment Interest Rate

##### 1.       *Entitlement to Prejudgment Interest*

**¶6**        Monroe next argues that the trial court erred in failing to award prejudgment interest on the homestead exemption proceeds. He claims that he is entitled to prejudgment interest because the exemption is a liquidated debt. Because this issue involves a matter of law, our review is de novo. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82, 919 P.2d 176, 177 (App. 1995).

**¶7**        When a claim sounds in contract or tort, "a party with a liquidated claim is entitled to prejudgment interest as a matter of right." *Precision Heavy Haul, Inc. v. Trail King Industries, Inc.*, 224 Ariz. 159, 160, ¶ 4, 228 P.3d 895, 896 (App. 2010). A liquidated claim is one "ascertainable by accepted standards of valuation," *Alta Vista Plaza*, 186 Ariz. at 83, 919 P.2d at 178, such that the sum demanded is "susceptible to exact computation" without reliance on opinion or discretion. *Costanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz. App. 313, 317, 533 P.2d 73, 77 (App. 1975). A dispute

over liability, apportionment of fault, or the amount due will not serve to make a claim for damages unliquidated when the basis for calculating those damages is certain. *Precision Heavy Haul*, 224 Ariz. at 162–63, 228 P.3d at 898–99 (citing *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 64 F.3d 1282, 1291 (9th Cir. 1995)).

**¶8**         Here, the homestead exemption is a liquidated debt. Although there was a dispute as to whether the exemption should be awarded and the extent, if any, of offsets to be applied against it, the potential amount was calculable by subtracting any potential offsets from the base amount of the homestead exemption. Gagan argues that because there was a dispute as to the applicable amount of offsets, the claim was not exactly calculable and therefore unliquidated. But a question as to liability or apportionment of damages does not make a claim unliquidated. *Id.*; *see also Homes & Son Const. Co. v. Bolo Corp.*, 22 Ariz. App. 303, 306, 526 P.2d 1258, 1261 (App. 1974) (explaining that "[m]ere differences of opinion as to the amount" of a judgment will not preclude awarding prejudgment interest). We conclude, therefore, that the amount owed Monroe under the homestead exemption was a liquidated claim. As a matter of law, Monroe is entitled to prejudgment interest.

**¶9**         Prejudgment interest begins to accrue when the judgment creditor provides "sufficient information" and supporting data to allow the debtor to determine the amount owed. *Homes & Son Const.*, 22 Ariz. App. at 306–07, 526 P.2d at 1261–62. This typically occurs when demand for a "sum certain" is made on the judgment debtor. *Rawlings v. Apodaca*, 151 Ariz. 180, 186, 726 P.2d 596, 602 (App. 1985), *vacated in part on other grounds*, 151 Ariz. 149 (1986). Because the $150,000 homestead exemption "automatically attached to the [debtor's] interest in identifiable cash proceeds" from the sale of the property, *see* A.R.S. § 33-1101, an adequate "demand" for the exemption was deemed to have been made at that time*, see Stenz v. Indus. Comm'n of Ariz.*, 236 Ariz. 104, 107, ¶ 8, 336 P.3d 737, 740 (App. 2014) (explaining that interest began to accrue on a claim for disability benefits when the debtor had "notice of its obligation" to pay the benefits). Gagan had sufficient information to determine the amount owed at the time of the sale. We therefore vacate the trial court's denial of prejudgment interest and remand to the superior court to enter an award

of prejudgment interest accruing from the time of the foreclosure sale in November 2006.[1]

### 2. Post-Judgment Interest Rate

**¶10** Monroe next argues that the trial court erred when it approved a post-judgment interest rate of 4.25 percent.[2] Monroe claims that the correct interest rate is 10 percent pursuant to A.R.S. § 44-1201(A). We review de novo the interpretation of statutes. *See Minjares v. State*, 223 Ariz. 54, 61, ¶ 33, 219 P.3d 264, 271 (App. 2009) (reviewing a previous version of this statute).

**¶11** Before a statutory amendment in 2011, Monroe's assertion that A.R.S. § 44-1201(A) governed the default interest rates on Arizona judgments would have been correct. The legislature amended § 44-1201 in 2011, however, and the word "judgment" was deleted from subsection (A). 2011 Ariz. Sess. Laws, ch. 99, § 15 (1st Reg. Sess.). Since that amendment, § 44-1201(B) contains the following operative language regarding judgments:

> Unless specifically provided for in statute or a different rate is contracted for in writing, *interest on any judgment shall be at the lesser of ten per cent per annum or at a rate per annum that is equal*

---

[1] We disagree with Gagan's argument that prejudgment interest awarded should be offset against the debt Monroe currently owes Gagan. Prejudgment interest is not a supplement to a judgment, but is an integral part of a judgment awarded in order to make a judgment creditor whole. *See Precision Heavy Haul, Inc. v. Trail King Indus., Inc.*, 224 Ariz. 159, 162, ¶ 14, 228 P.3d 895, 898 (App. 2010); *see also Stenz v. Indus. Comm'n of Ariz.*, 236 Ariz. 104, 110, ¶ 22, 336 P.3d 737, 743 (App. 2014) (awarding interest in order to compensate for both the lost use of and the "time value of the money" (internal quotation omitted)). Prejudgment interest awarded on a creditor-exempt judgment is also, therefore, exempt from creditors.

[2] As of the date of judgment (March 5, 2013), the prime rate as published by the board of governors of the Federal Reserve System in statistical release H.15 was 3.25 percent. *See Board of Governors of the Federal Reserve System*, Selected Interest Rates (Weekly) – H.15 (March 4, 2013), *available at* www.federalreserve.gov/releases/h15/20130304 (last visited April 28, 2015).

*to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered.* The judgment shall state the applicable interest rate and it shall not change after it is entered.

(emphasis added). The legislature stated that this amendment "applies to all loans that are entered into, all debts and obligations incurred and all judgments that are entered on or after" July 20, 2011. *See* S.B. 1212, 50th Leg. 1st Sess. (Ariz. 2011) (enacted). Although the events giving rise to the judgment occurred before 2011, Monroe's right to post-judgment interest did not vest until judgment was entered in 2013. *See Steinfeld v. Nielsen*, 15 Ariz. 424, 465, 139 P. 879, 896 (1913) (explaining that rights contingent on the happening of a future event are not vested). The court, therefore, appropriately followed the amended version of the statute by applying a post-judgment interest rate of 4.25 percent.[3]

### C. Evidentiary Issues

**¶12**          Finally, Monroe argues that the trial court erred in admitting evidence that resulted in "excessive" offsets from Monroe's homestead exemption award. We review evidentiary rulings for an abuse of discretion and will generally affirm them unless abuse or legal error and prejudice are apparent. *Ryan v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 46, ¶ 12, 262 P.3d 863, 867 (App. 2011). Monroe also contends that the evidence does not support the trial court's rulings on the offsets to the exemption. We view the evidence and the reasonable inferences drawn from it in the light most favorable to the prevailing party, and we will affirm a judgment if reasonable evidence supports it. *FL Receivables Trust 2002-A v. Arizona Mills, L.L.C.*, 230 Ariz. 160, 166, ¶ 24, 281 P.3d 1028, 1034 (App. 2012). Whether the judgment is supported by sufficient evidence is a question of

---

[3] Although not specifically addressed in the briefs, in the interest of judicial economy in this litigation, we note that the same 4.25 percent interest rate is applicable to the award of prejudgment interest on remand. *See* A.R.S. § 44-1201(B), (F); S.B. 1212, 50th Leg. 1st Sess. (Ariz. 2011) (enacted) (explaining that A.R.S. § 44-1201(B) applies to judgments entered after July 20, 2011); *Metzler v. BCI Coca-Cola Bottling Co. of Los Angeles, Inc.*, 235 Ariz. 141, 146, ¶¶ 19–20, 329 P.3d 1043, 1048 (2014) (explaining that the obligation to pay prejudgment interest does not arise until the judgment is entered "even though the time frame for which prejudgment interest is owed obviously predates the judgment").

law that we review de novo. *Acuna v. Kroack*, 212 Ariz. 104, 110, ¶ 23, 128 P.3d 221, 227 (App. 2006).

**¶13**    In awarding offsets, the trial court stated only that "[t]he Court finds that Mr. Gagan has met his burden of proof to establish offsets of $36,595.24 as summarized in Gagan's [Closing Argument] Brief at p.7."[4] A heading in Gagan's closing argument brief declares "Gagan is Entitled to $36,595.24 for Replacement of Various Appliances Monroe Removed From the Property and Related Repairs." Underneath this heading, the brief itemizes the expenses that equal $36,595.24.

**¶14**    Gagan's closing argument brief relies on exhibits presented at trial and the trial transcript to support its itemized list of offsets. These trial exhibits are copies of bills paid by Gagan. At trial, Gagan testified to paying these bills. Gagan further testified, and Monroe stipulated, that some appliances had been removed from the property. From these exhibits and the testimony, the trial court had sufficient evidence to conclude that these expenditures were necessary because of waste to the property that was allowed or performed by Monroe.[5] Accordingly, the trial court did not abuse its discretion in allowing the evidence presented, and we affirm the award of offsets because sufficient evidence reasonably supports the trial court's ruling.

---

[4] Neither here nor in the trial court did the parties address whether offsets against a homestead exemption are legally permitted. By this court's prior decision in this matter, *Monroe v. Gagan*, 2011 WL 2555736 (Ariz. App. 2011), the matter was remanded for a determination of the amount of applicable offsets. That decision now constitutes the law of the case. *See State ex rel. Herman v. Schaffer*, 110 Ariz. 91, 95, 515 P.2d 593, 597 (1973); *Snyder v. Pima Cnty.*, 6 Ariz. 41, 47, 53 P. 6, 6 (1898). We therefore assume, without deciding, that offsets are permissible against the homestead exemption.

[5] "Waste . . . may be briefly and very generally defined as the destruction, misuse, alteration, or neglect of premises by one lawfully in possession thereof, to the prejudice of the estate or interest therein of another." *Jowdy v. Guerin*, 10 Ariz. App. 205, 208, 457 P.2d 745, 748 (App. 1969) (quoting 56 Am. Jur. *Waste* § 2 (1947)). "Thus, three elements are essential to [a waste claim]: 1. There must be an act constituting waste[;] 2. The act must be done by one legally in possession[;] 3. The act must be to the prejudice of the estate or interest therein of another." *Id.*

## II.     Gagan's Cross-Appeal

### A.     Homestead Exemption Claims

¶15     The major claim of Gagan's cross-appeal is that Monroe is not entitled to the homestead exemption.  Gagan argues that Monroe was not a resident of Arizona on the date of the marshal's sale, November 16, 2006, or if he was, he had abandoned the property.  To qualify for the homestead exemption, A.R.S. § 33-1101(A) requires a person to "reside[] within the state."  Gagan proffers that residency is determined by an examination of "the intent of a party," citing cases primarily from Arizona's federal bankruptcy court.

¶16     The Arizona Supreme Court has stated that "[r]esidence . . . like '[d]omicile is primarily a state of mind combined with actual physical presence in the state' or county" that "'involves basically subjective material.'"  *St. Joseph's Hosp. and Med. Center v. Maricopa Cnty.*, 142 Ariz. 94, 99, 688 P.2d 986, 991 (1984) (quoting *Arizona Board of Regents v. Harper*, 108 Ariz. 223, 228, 495 P.2d 453, 458 (1972)).  Here, Monroe testified that he was a resident of Arizona at the time of the marshal's sale.  Although Gagan asserts that the evidence he presented of Monroe's alleged intent to move to Texas in November 2006 was sufficient for the court to find that Monroe was not an Arizona resident, he cites no evidence or authority that required the trial court to make such a finding.  The trial court had discretion to resolve the conflict in the evidence by finding that Monroe was an Arizona resident at the time of the marshal's sale.

¶17     Gagan next asserts that if Monroe was an Arizona resident in November 2006, he had abandoned the property prior to the marshal's sale and therefore, under A.R.S. § 33-1104, abandoned his claim to a homestead exemption.  Gagan claims that the proof of abandonment was that "Monroe swore that he was a Texas resident for at least a period of two years."  The two-year period relied upon by Gagan, however, was between December 2006 and December 2008, *after* the homestead exemption attached in November 2006.  Accordingly, the trial court did not err in rejecting Gagan's argument that Monroe's homestead exemption was abandoned.

### B.     Statute of Limitations

¶18     Gagan also argues that the trial court erred in holding that the applicable statute of limitations does not bar Monroe's claim to the homestead exemption.   Under A.R.S. § 12-541, claims to "liability created

by statute, other than a penalty or forfeiture" are waived unless commenced within one year from the time they arise.

¶19        Gagan claims that Monroe did not raise the issue of the homestead exemption until it was added to his second amended complaint, filed more than five years from the time the claim arose in November 2006. However, as the trial court correctly noted, Monroe's original complaint effectively raised the issue by claiming that Gagan wrongfully failed to pay the exemption as required by Arizona's statutory scheme. This complaint was timely filed on August 30, 2007, within a year of the marshal's sale in November 2006. Therefore, the statute of limitations does not bar Monroe's claim.

## C.        Gagan's Payment of Monroe's Outstanding Mortgage

¶20        Gagan also contends that the trial court erred by not including his payment of the remaining amount of Monroe's mortgage as an offset to the homestead exemption. Gagan asserts that the language of A.R.S. § 33-1105, directing the sale officer to pay the "the amount of any consensual liens on the property having priority to the judgment," should be interpreted as granting Gagan an offset against the homestead exemption for the amount of the consensual lien. We review the interpretation of statutes de novo. *State v. Garcia*, 219 Ariz. 104, 105, ¶ 6, 193 P.3d 798, 799 (App. 2008). We look first to the statute's plain language as the most reliable indicator of its meaning. *State v. Moore*, 218 Ariz. 534, 535, ¶ 5, 189 P.3d 1107, 1108 (App. 2008).

¶21        In relevant part, A.R.S. § 33-1105 states:

> After receipt of a sufficient bid, the officer shall sell the property. From the proceeds, the officer shall first pay the amount of the homestead to the judgment debtor plus the amount of any consensual liens on the property having a priority to the judgment and then pay the costs of the sale.

Nowhere does the statute suggest that homestead exemption should be offset by the payment of any consensual liens remaining on the property at the time of the sale. Instead, the statute's plain language indicates that the homestead exemption is wholly separate from the payment of any consensual liens. Gagan cites no authority for his proposition that payment of consensual liens results in an offset against the homestead exemption,

nor is it supported by the plain language of the statute.  The trial court did not err in its interpretation of A.R.S. § 33-1105.

### D. Gagan's Wrongful Lis Pendens Claims

¶22 Gagan lastly contends that the trial court erred by refusing to offset Monroe's homestead exemption with damages for the filing of multiple wrongful lis pendens claims.  He asserts that the wrongful lis pendens actions filed by Monroe and Pirtle were directly responsible for Gagan's sale of the Scottsdale property at approximately $350,000 less than he would have otherwise been able to obtain.  Gagan argues that this $350,000 difference "provide[s] an additional offset to any claim upon which Monroe is successful following appeal."

¶23 During the bench trial, the following exchange occurred between the trial court and counsel for the parties:

> [GAGAN'S COUNSEL #1]:  And -- the part of it is that the -- the expenses later on in time were attributable to the lis pendens and Mr. Gagan's inability to sell the property while that issue was being resolved in Court.  Once that issue was finally resolved, the property was sold immediately.
>
> THE COURT:  Well I don't have any claim in front of me about -- that there was some sort of wrongful lis pendens and damages that flow from a wrongful lis pendens.  That's not the claim.  The claim that I had from the Court of Appeals, sent back to me, was determine what the setoffs are to the homestead exemption and it certainly -- you know, there isn't a lot of detail here from them as to what those offsets might be.  But to say that because he couldn't sell it because it was tied up in litigation for two years so every dime he spent on it should be attributable to the Plaintiff.  That's your position?
>
> [GAGAN'S COUNSEL #1]:  It is, Your Honor.
>
> THE COURT: Okay.  Interesting.  Wouldn't that be some sort of claim for wrongful lis pendens?
>
> [GAGAN'S COUNSEL #1]:  I believe that's the appropriate claim.

THE COURT: Is that a claim that you guys brought? Is that a counterclaim in this case?

[MONROE'S COUNSEL]: No.

[GAGAN'S COUNSEL #1]: It showed up in our disclosure statement.

THE COURT: Well it didn't -- when did it show up in your disclosure statement?

[GAGAN'S COUNSEL #1]: I think that was dated February 19th -- February 15th, 2012, Defendant's disclosure statement, notes that if a lis pendens is not removed, then Monroe is liable for sanctions and fees under Arizona Revised Statute 33-420.

THE COURT: And what -- what is he liable under that statute?

[GAGAN'S COUNSEL #2]: The statute is pretty specific, Your Honor, as to what constitutes a violation.

THE COURT: No, that's not what I asked him. I'm asking what are the elements of damages that he can collect on. (Counsel confer)

[GAGAN'S COUNSEL #2]: You're talking about, Your Honor, 33-420?

THE COURT: Yeah, what about it?

[GAGAN'S COUNSEL #2]: It's $5,000 or . . . actual damages and I believe there might be a double or trebling.

THE COURT: Or actual damages?

[GAGAN'S COUNSEL #2]: Yes.

THE COURT: Yeah. Well that's a separate claim for relief, counsel. That doesn't sound like a setoff.

¶24      As the trial court correctly noted, a wrongful lis pendens claim is a separate cause of action that is distinct from the question of what offsets, if any, Gagan is entitled to take from Monroe's homestead exemption. *See* A.R.S. § 33-420. Although Gagan demanded "that the Lis Pendens be immediately removed" from the property in his answer to Monroe's second amended complaint, this demand was granted when the trial court quashed Monroe's first lis pendens. Moreover, a claim of wrongful lis pendens was not raised by Gagan in the Rule 16(D) joint pretrial statement. Gagan has never filed or pled a wrongful lis pendens claim for damages as part of this litigation in accordance with the Arizona Rules of Civil Procedure. The trial court was therefore correct to not consider Gagan's claims regarding alleged damages for wrongful lis pendens, and, similarly, we will not consider his arguments on this issue because it was not properly asserted and pled in the trial court. *See Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. Partnership*, 230 Ariz. 29, 43, ¶ 44, 279 P.3d 1191, 1205 (App. 2012) (refusing to consider an argument on appeal that was not properly raised in the trial court).

## III.    Costs and Attorney Fees on Appeal

¶25      Both parties have requested an award of costs on appeal. Because Monroe prevailed on his claim for prejudgment interest, we will award taxable costs to Monroe as the successful party. *See* A.R.S. § 12-341; *see also Henry v. Cook*, 189 Ariz. 42, 43–44, 938 P.2d 91, 92–93 (App. 1996) (holding that "a party who succeeds on less than all claims is sufficiently successful to recover costs"). Gagan also requested attorney fees on appeal under A.R.S. § 33-420(A), in conjunction with his lis pendens argument. Because we reject Gagan's lis pendens claim, we deny his request for attorney fees based on that claim.

## CONCLUSION

**¶26**        We affirm the trial court's judgment, except that we vacate the denial of prejudgment interest and remand to the trial court for entry of an amended judgment awarding Monroe prejudgment interest at 4.25 percent from the date of the sale to the date of the judgment.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama