IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**CHARLES W. STENZ, DECEASED,**
*Petitioner Employee,*

**ELIZABETH STENZ, WIDOW,**
*Petitioner,*

*v.*

**THE INDUSTRIAL COMMISSION OF ARIZONA,**
*Respondent,*

**CITY OF TUCSON,**
*Respondent Employer,*

**PINNACLE RISK MANAGEMENT SERVICES,**
*Respondent Insurer.*

---

No. CV-14-0298-PR
Filed July 20, 2015

---

Appeal from the Industrial Commission of Arizona
The Honorable Gary M. Israel, Administrative Law Judge
No. 20051100192
**AWARD SET ASIDE**

Opinion of the Court of Appeals, Division Two
236 Ariz. 104, 336 P.3d 737 (App. 2014)
**VACATED**

---

COUNSEL:

M. Ted Moeller (argued), Tucson, and Andrew J. Petersen, Tucson, Attorneys for City of Tucson and Pinnacle Risk Management Services

J. Patrick Butler (argued), Tretschok, McNamara & Miller, P.C., Tucson, Attorneys for Elizabeth Stenz, widow of Charles W. Stenz

James B. Stabler, Phoenix, Attorney for Amicus Curiae CopperPoint Mutual Insurance Company

---

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BERCH and TIMMER joined, and BRUTINEL concurred.

_____

CHIEF JUSTICE BALES, opinion of the Court:

¶1         Although Arizona's Workers' Compensation Act does not mandate the payment of interest on benefits not timely paid, this Court has held that the general interest statute, A.R.S. § 44-1201, applies to workers' compensation awards. Today we hold that death benefits under A.R.S. § 23-1046 are liquidated, and interest on them accrues from the time a carrier receives notice that a survivor has filed a claim with the Industrial Commission pursuant to A.R.S. § 23-1061(A).

**I.**

¶2         In 2005, Charles Stenz suffered an on-the-job injury for which he filed a claim with his employer's insurance carrier, Pinnacle Risk Management. Pinnacle accepted the claim and paid the benefits. In 2009, Stenz died. Alleging that his death resulted partly from the 2005 injury, Stenz's widow filed a claim for death benefits under A.R.S. § 23-1061(A). The claim was filed with the Industrial Commission on September 21, 2009. Pinnacle received notice of the claim on October 21, 2009.

¶3         One week later, Pinnacle denied the claim. An Administrative Law Judge ("ALJ") upheld the denial, but the court of appeals set aside that award. After a new hearing, the ALJ issued an award granting death benefits. In 2013, nearly four years after Mrs. Stenz filed her claim, the ALJ entered a final order affirming the award. Pinnacle paid the benefits dating back to Stenz's death, but did not pay interest on the unpaid benefits.

¶4         Mrs. Stenz requested a hearing pursuant to A.R.S. § 23-1061(J), alleging that she was owed interest on unpaid death benefits from the time the claim was originally filed until the award was ultimately paid. The ALJ ruled that no interest was owed on the death benefit before the award became final in 2013. The court of appeals set this ruling aside, concluding that the claim was liquidated as of the date Pinnacle received notice of it. *Stenz v. Indus. Comm'n*, 236 Ariz. 104, 336 P.3d 737 (App. 2014).

**II.**

**¶5**        This Court has applied Arizona's general interest statute, A.R.S. § 44-1201, to claims arising under the Workers' Compensation Act. *Tisdel v. Indus. Comm'n*, 156 Ariz. 211, 212, 751 P.2d 527, 528 (1988). We later clarified that interest begins to accrue when "(1) there is a legal 'indebtedness . . . or other obligation' to pay benefits *and* (2) when the carrier has 'notice of [this] obligation to pay.'" *DKI Corp./Sylvan Pools v. Indus. Comm'n*, 173 Ariz. 535, 537, 845 P.2d 461, 463 (1993) (quoting *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529). Here we consider whether a "legal indebtedness . . . or other obligation" first arises when a carrier receives notice of a claimant's petition for death benefits under A.R.S. § 23-1046 or instead when an ALJ orders that such benefits be paid.

**¶6**        *Tisdel* and *DKI* provide guiding principles but do not answer the question. In *Tisdel*, the insurance carrier accepted a claim for benefits in 1971 but did not pay that claim for nearly fourteen years. 156 Ariz. at 212, 751 P.2d at 528. The legal indebtedness indisputably existed in 1971, and we held that interest accrued on that indebtedness throughout the nearly fourteen-year period of inactivity. *Id.* In *DKI*, by contrast, the claimant filed a petition to re-open a claim under A.R.S. § 23-1061(H). 173 Ariz. at 537, 845 P.2d at 463. There we held that a petition to re-open did not trigger indebtedness sufficient to accrue interest. *Id.* at 539, 845 P.2d at 536.

**¶7**        In *DKI*, we applied the "liquidated-unliquidated" test to determine whether a "legal indebtedness . . . or other obligation" exists so that interest begins to accrue. *Id.* at 538, 845 P.2d at 464. "A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *La Paz County v. Yuma County*, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987). If the amount of benefits to be paid is liquidated and the carrier has notice of the liquidated obligation, then the Industrial Commission should award interest. *DKI*, 173 Ariz. at 539, 845 P.2d at 465.

**¶8**        In *DKI*, this Court said that the claim in *Tisdel* was liquidated because it was for "scheduled benefits . . . susceptible to mathematical computation and applied to the statutory payment schedule." 173 Ariz. at 538, 845 P.2d at 464. But in *DKI*, there was "no indication that the amount of benefits could have been accurately determined when the initial award was entered." *Id.* Because of this uncertainty, "by definition, the ALJ did

not find that [the claimant] was entitled to any benefits until the date of the initial award."  *Id.* at 537, 845 P.2d at 463.

**¶9**        A claim for death benefits, like the claim at issue in *Tisdel*, is subject to a fixed payment schedule.  A.R.S. § 23-1046(A)(2).  Pinnacle received notice of this claim in October 2009.  The amount to be paid did not depend on an ALJ's later award.  A legal obligation to pay may exist before, or even in the absence of, a court order commanding such payment.  *See Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 201 ¶ 17, 236 P.3d 421, 428 (App. 2010).  We agree with the special concurrence in the court of appeals that "a court may *enforce* a legal obligation, [but] no court action is required to *create* a legal obligation."  *Stenz*, 236 Ariz. at 111 ¶ 27, 336 P.3d at 744 (Howard, J., specially concurring).

**¶10**        Under Arizona's workers' compensation scheme, the obligation to pay is created by A.R.S. § 23-1061(G), which commands that "the insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission."  Because the obligation to pay was created by statute and was for a liquidated amount prescribed by the statute's schedule, Pinnacle had notice of the obligation upon its receipt of Mrs. Stenz's claim in October 2009.  Interest began to accrue on that date.  (As noted in the concurring opinion, ¶ 17, no party has urged us to depart from *DKI*'s holding that interest only begins to accrue when the carrier receives notice of the claim.)

**¶11**        Pinnacle argues that mechanisms already exist to prevent carriers from withholding benefits in bad faith, pointing both to statutory provisions such as A.R.S. § 23-930 (civil penalties for unfair or bad faith claim processing) and tort law, *see, e.g.*, *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668, 678 (1994) (holding that A.R.S. § 23-930 does not displace common-law tort actions for bad faith processing of claims).  But these arguments misconstrue the purpose of awarding interest for liquidated claims for benefits.  Although allowing interest may induce insurance companies to act more quickly, the primary purpose is to protect a claimant's right to be made whole after an injury.

**¶12**        This Court has previously recognized the "economic fact" that any money damage award is worth less the later a claimant receives it.

*Tisdel*, 156 Ariz. at 214, 751 P.2d at 530.  A party who is deprived of the use of money has suffered an economic loss and the party who retains the use of money is unjustly enriched.  *La Paz*, 153 Ariz. at 168, 735 P.2d at 778.  Interest is the remedy for this deprivation.

**¶13**  Recovery of interest in these circumstances furthers the purpose of Arizona's Workers' Compensation Act, "to dispense, so far as possible, with litigation between employer and employee and to place upon industry the burden of compensation for injuries caused by the employment." *Pressley v. Indus. Comm'n*, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951).  A contrary ruling would deprive a claimant of the full value of the benefit owed while undesirably encouraging insurance carriers to protract litigation to delay paying benefits for as long as possible.

### III.

**¶14**  We hold that a claim for death benefits filed pursuant to A.R.S. § 23-1046 is a liquidated claim and interest is owed on the claim from the date on which the carrier receives notice of the claim.  Accordingly, we vacate the opinion of the court of appeals and set aside the ALJ's award denying Mrs. Stenz relief.

JUSTICE BRUTINEL, concurring:

¶15        Although I otherwise agree with the majority's analysis, I write separately because I think interest on the death-benefits claim should accrue from the date of death rather than the date the carrier receives notice of the claim. The majority correctly cites *DKI Corp./Sylvan Pools v. Industrial Commission*, 173 Ariz. 535, 537, 845 P.2d 461, 463 (1993), for the proposition that interest on a workers' compensation claim does not begin to accrue until the carrier receives notice of the claim. *Id. DKI* relies on an earlier case, *Tisdel*, for the proposition that the carrier must have notice of a claim before interest begins to accrue. *See DKI*, 173 Ariz. at 537, 845 P.2d at 463 (quoting *Tisdel v. Indus. Comm'n*, 156 Ariz. 211, 213, 751 P.2d 527, 529 (1988)).

¶16        But neither *DKI* nor *Tisdel* explain why interest should not begin to run until the carrier has notice of the claim. When we adopted the liquidated/unliquidated test, we stated only that "[a] claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *La Paz County v. Yuma County*, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987) (quoting *Ariz. Title Ins. and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz. App. 486, 496, 484 P.2d 639, 649 (1971)). As the majority points out, A.R.S. § 23-1061(G) creates "the obligation to pay [death benefits]," and these benefits are immediately calculable at death. *Supra*, ¶ 10. Because this legal obligation to pay a liquidated sum exists prior to any action to enforce payment, interest should begin to accrue from that date, just as in any other area of the law where prejudgment interest is available. *See, e.g., La Paz County*, 153 Ariz. at 168, 735 P.2d at 778; *Rossi v. Hammons*, 34 Ariz. 95, 104, 268 P. 181, 184 (1928) ("[W]hen allowed as damages, interest runs from the date when the right to recover a sum certain is vested in the plaintiff." (internal citation omitted)). This is consistent with the purpose of awarding interest, which "protects a claimant's right to be made whole after an injury." *Supra*, ¶ 11. To hold otherwise wrongfully deprives claimants use and enjoyment of their money without compensation, even if the time between death and notice is relatively short. *See La Paz County*, 153 Ariz. at 168, 735 P.2d at 778.

¶17        Although I think this is the better technical approach, neither party urged this position before this Court. Because we have not had the benefit of briefing and argument by counsel, and recognizing that the

monetary difference would be relatively small in this case, I concur in the opinion of the Court.